RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
One Penn Plaza, Suite 2430
New York, NY 10119
Telephone: (212) 382-1600
  *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ELIO VALDOVINOS,

                                Plaintiff,

          v.

9300 REALTY MANAGEMENT INC.,
CROMAN REAL ESTATE, INC., CROMAN
FAMILY ASSOCIATES, LLC., 1345-1349
AMSTERDAM AVE LLC and STEVEN CROMAN,

                             Defendants.
-------------------------------------------------------------X

Civil Action No.:   CV-

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

       Plaintiff ELIO VALDOVINOS ("Valdovinos" or "Plaintiff"), by his attorneys, RAPAPORT LAW FIRM, PLLC, as and for his Complaint, alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

       1.     This lawsuit seeks to recover minimum wages and overtime compensation, as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, et seq. ("NYLL"), and defendants' failure to pay spread overtime hours pay, failure to pay timely wages, and provide wage notices and statements, as required by the NYLL.

<u>**JURISDICTION AND VENUE**</u>

       2.     This Court has subject matter jurisdiction of this action pursuant to the provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217.  This Court also has jurisdiction in light of

the existence of a controversy arising under the laws of the United States (28 U.S.C. § 1331), and supplemental jurisdiction to consider claims arising under New York State law, pursuant to 28 U.S.C. §1367.

3.      Defendants 9300 Realty Management Inc. ("9300 Realty"), Croman Real Estate, Inc. ("Croman Real Estate"), Croman Family Associates, LLC ("Croman Family Associates"), 1345-1349 Amsterdam Ave LLC, and Steven Croman ("Croman") (collectively as "Defendants") are an enterprise (hereinafter referred to as the "Croman Enterprise") with a common business purpose and under common control whose annual volume of sales made or business done is not less than $500,000, the activities of which effect interstate commerce in Defendants' employees, including but not limited to the Valdovino, handle goods, including janitorial goods, that have moved in interstate commerce.

4.      The Croman Enterprise was founded by defendant Croman in approximately 1990, and it functions for a common business purpose, to wit: management and control of approximately 140 apartment buildings located throughout Manhattan.   The Croman Enterprise operates these properties as a unified business enterprise from its main office at 740 Broadway, New York, New York 10003.

5.      Upon information and belief, the Croman Enterprise owns and/or controls approximately     2,499     apartment     units     in     Manhattan.     (See https://therealdeal.com/2016/05/11/steve-croman-took-in-at-least-63m-from-his-properties-in-2014-trdata/ (accessed on March 3, 2018).

6.      Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. § 1391.  Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process.  The unlawful acts alleged herein have a direct effect on the Plaintiff within the State of New York and

2

within this judicial district.  Defendants do business within the Southern District of New York.

7.      Upon information and belief, defendant Croman resides at the Manhattan Detention Complex as a consequence of having been sentenced on October 3, 2017, to a one-year prison sentence for grand larceny, falsifying business records, and criminal tax fraud in his operation and control of the Croman Enterprise. (See https://ag.ny.gov/press-release/ag-schneiderman-announces-jail-sentence-major-nyc-landlord-steven-croman)    (accessed    on March 3, 2018).

8.      This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Prfactice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

9.      A declaratory judgment is authorized in this case by 28 U.S.C. § 2201**.**

### THE PARTIES

**Plaintiff**

10.      Valdovinos is an adult, natural person who resides in the City, County and State of New York.

11.      Commencing in or about 2004, Valdovinos began working as superintendent of apartment buildings located at 1345-1349 Amsterdam Avenue, New York, New York (the "Buildings").

12.      On or about March 3, 2015, Defendants acquired ownership and control of the Buildings, and, as a result, became Valdovinos' employer.

13.     At all relevant times, Valdovinos was required, as a condition of his employment, to remain on-call in the vicinity of the Buildings, seven days per week.

14.     Prior to Defendants' purchase of the Buildings, Valdovinos was paid wages for his work. Upon acquiring the Buildings, Defendants' manager, Janet Donovan, repeatedly made promises to Valdovinos that Defendants would pay $300 per week to him for his work. But notwithstanding these promises, Defendants never paid Valdovinos any wages at all.

15.     Valdovinos ceased working for Defendants in or about November 2017.

**Defendants**

16.     Upon information and belief, Croman Real Estate is a domestic business corporation organized and existing under the laws of the State of New York, and it maintains its principal place of business at 740 Broadway, New York, New York.

17.     Upon information and belief, Croman Family Associates is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 740 Broadway, New York, New York.

18.     Upon information and belief, 9300 Realty Management is a domestic business corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 740 Broadway, New York, New York.

19.     Upon information and belief, 1345-1349 Amsterdam Ave LLC is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business at 740 Broadway, New York, New York 10012.

20.     At all relevant times, 1345-1349 Amsterdam Ave LLC was title owner of the Buildings where Valdovinos was employed, and it was directly benefitted by the work that Valdovionos performed.

21.     Upon information and belief, Croman resides at the Rikers Island jail complex in Bronx County, and at all relevant times he exercised ownership and control over the Croman Enterprise.

22.     Croman is the highest ranking officer of 1345-1349 Amsterdam Ave LLC.

23.     Croman possesses ownership interests in the defendant corporations, and controls significant functions of the defendant corporations.

24.     Croman exercised sufficient operational control over the Croman Enterprise's operations to be considered Valdovinos' employer under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL").

25.     Defendants jointly employed Valdovinos within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

26.     In the alternative, Defendants constitute a single employer of Valdovinos within the meaning of the FLSA and NYLL.

27.     Defendants had the power to hire and fire Valdovinos, control his terms and conditions of employment, and determine the rate and method of any compensation in exchange for his services.

28.     In each year from 2015 through 2018, Defendants, both individually and jointly, had a gross annual income of not less than $500,000.

## FACT ALLEGATIONS

*Defendants' Egregious Exploitation of Valdovinos*

29.     Commencing in or about March 2015 until in or about November 2017, Valdovinos was employed by Croman Enterprise as superintendent of the Buildings.

30.     Valdovinos performed maintenance, cleaning, painting, repair, janitorial, exterminating, light construction, garbage removal, and related maintenance work at the Buildings.

31.     At all times relevant to this Complaint, Valdovinos regularly worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that he worked.

32.     At all relevant times hereinafter mentioned, Valdovinos was required to be paid overtime pay at the statutory rate of time and one-half (1 and 1/2) his regular pay after he worked 40 hours in a workweek.

33.     Defendants failed to pay any wages whatsoever to Valdovinos.

34.     Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Valdovinos appropriately for any hours worked, either at a minimum wage rate of pay or for any additional overtime premium.

35.     From approximately March 2015 through November 2017, Valdovinos worked seven (7) hours per day, seven (7) days per week (typically 49 hours per week).  His daily schedule, 7 days per week, was typically as follows: mornings: 6:30 a.m. to 11:30 a.m.; and evenings: 5:00 p.m. to approximately 7:00 p.m.

36.     In addition, Valdovinos was required to be on-call at all hours in the vicinity of the Buildings to handle tenant requests and emergencies.

37.     Residents of the Buildings, as well as Defendants' managers, regularly made repair requests of Valdovinos that caused him to work hours above and beyond his regular daily schedule. These repairs encompassed, *inter alia*, fixing leaking toilets; unclogging shower drains; and resetting and replacing fuses.

38.     In the winter, Valdovinos shoveled snow at all hours of the day and night, and he checked and maintained the boilers late at night.

39.     Tenants of the Buildings were provided Valdovinos' cellular telephone number so that they could reach him 24 hours per day, 7 days a week.  Tenants who

misplaced their keys would rely on Valdovinos to provide entry to their apartments at all hours of the night, and Valdovinos was on-call for such emergent circumstances.

40.     Valdovinos' telephone number was also posted at entrances to Buildings, so that people could contact him to gain entry at various times.

41.     Valdovinos would also clean, mop, make minor repairs, perform plumbing work, perform electrical work, accept oil deliveries, perform minor carpentry, communicate with tenants, handle recycling, collect and take out the garbage, provide access to real estate brokers to show apartments to prospective tenants, polish floors, paint, clean and repair newly-vacated apartments, install appliances, fix faucets, communicate with contractors, and provide access to police, ambulance and fire personnel.

42.     Valdovinos was required to provide and pay for his own "tools of the trade," including hand tools that were essential to the performance of his job.

43.     Valdovinos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device that accurately reflected his hours worked.

44.     Defendants did not provide Valdovinos with an accurate statement of wages, as required by NYLL § 195(3).

45.     Defendants did not give any notice to Valdovinos , in English and in Spanish (Valdovinos' primary language) of his rate of pay, employer's regular pay day, and such other information as required  by NYLL § 195(1).

46.     Defendants' refusal to pay Valdovinos <u>any</u> wages for his work was intentional, willful, and in bad faith.

47.     Defendants' willfully failed to keep track of Valdovinos' hours worked, provide him with wage notices, and provide him with tools to perform his job for the purpose of evading federal and state wage and hour laws.

## FIRST CAUSE OF ACTION
### FLSA Minimum Wage Violations, 29 U.S.C. §§ 201 *et seq.*

48.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

49.     At all relevant times hereto, Plaintiff was engaged in interstate "commerce" within the meaning for the FLSA.

50.     Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

51.     At all relevant times hereto, Defendants have employed "employee[s]," including Plaintiff.  Defendants have had the power to hire and fire Plaintiff, control his terms and conditions of employment and determine the rate and method of any compensation in exchange for his employment.

52.     Throughout the statute of limitations period covered by these claims, Defendants failed to pay Plaintiff the federal minimum wage for each hour worked, in violation of the Fair Labor Standards Act, 29 U.S.C. § 206(a).

53.     Defendants' failure to pay Valdovinos at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

54.     Plaintiff seeks damages in the amount of his respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Overtime Wage Violations under the FLSA

55.     Plaintiff Valdovinos repeats and realleges all paragraphs above as though fully set forth herein.

56. Throughout the statute of limitations period covered by these claims, Valdovinos regularly worked in excess of forty (40) hours per week.

57. Defendants required Valdovinos as part of his employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1). That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

58. Valdovinos seeks damages in the amount of his unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper, all to be determined at trial.

### THIRD CAUSE OF ACTION
### Violations of the New York Minimum Wage Act

59. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

60. At all relevant times hereto, Defendants have been Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

61. Defendants knowingly and willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

62. Defendants failure to pay Plaintiff the minimum wage has been willful within the meaning of the NYLL § 663.

63. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment

interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Violations of Overtime Provisions of the New York Labor Law\

64.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

65.     The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Valdovinos.

66.     Defendants willfully failed to pay Valdovinos for hours that he worked in excess of 40 hours in a workweek.  Valdovinos received no compensation whatsoever, let alone premium overtime compensation.

67.     As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER
### OF THE NEW YORK COMMISSIONER OF LABOR

68.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

69.     Defendants willfully failed to pay Plaintiff one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten (10) hours in violation of New York Lab. Law §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. TIT. 12, § 146-1.6.

70.     Plaintiff was damaged in amounts to be determined at trial.

71.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
**Illegal Deductions, New York Labor Law, Article 19 § 193
and 12 N.Y.C.R.R. § 2.10(a).**

72.     Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

73.     In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiff by requiring him to provide and pay for his own "tools of the trade," which further reduced their effective, hourly rates of compensation below the required minimum and overtime rates of pay.

74.     As a result of the foregoing, Plaintiff seeks judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**

75.     Plaintiff repeats and re-alleges and incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

76.     The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

77.     Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

78.     Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**EIGHTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices**

79.     Plaintiff repeats, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

80.     The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

81.     From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

82.     In violation of NYLL § 191, Defendants failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

83.     Due to Defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages: (a) From the commencement of his employment in or about March 2015, through January 5, 2015, the sum $50 per work week,

up to $2,500; and (b) from January 6, 2015 through November 2017, $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

## RELIEF SOUGHT

**WHEREFORE,** the Plaintiff respectfully requests that the Court grant the following relief:

1.      That the Court declare, adjudge and decree that Defendants willfully violated the minimum wage and overtime provisions of the FLSA;

2.      That the Court declare, adjudge and decree that Defendants willfully violated the minimum wage, overtime, spread of hours, wage notice and wage statement provisions of the NYLL;

3.      That the Court declare, adjudge and decree that the Plaintiff was, at all times relevant hereto, entitled to be paid (a) minimum wages; (b) overtime for work beyond 40 hours in a week; (c) remuneration for unlawful deductions; (d) spread-of-hours compensation; and (e) that the amounts to which Plaintiff is entitled is to be doubled as liquidated damages and awarded thereto;

4.      That the Court make an award to the Plaintiff of damages and/or restitution for the amount of unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

5.      An award of statutory damages for Defendants' failure to provide Plaintiff with accurate wage statements pursuant to NYLL § 198(1-d) and proper wage notices pursuant to NYLL § 198 (1-b);

6.      That the Court make an award to Plaintiff of reimbursement for all unlawful deductions;

7.      For all other Orders and Findings identified and sought in this Complaint;

8.      For prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

9.      For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), NYLL and as otherwise provided by law; and

10.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York          **RAPAPORT LAW FIRM, PLLC**
        March 8, 2018

                                           /s/
                        By: _____
                             Marc A. Rapaport
                             Attorney for Plaintiff
                             Rapaport Law Firm, PLLC
                             One Penn Plaza, Suite 2430
                             New York, New York 10119
                             Phone: (212) 382-1600

14